IN THE MATTER OF THE APPLICATION OF THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY TO ACQUIRE LANDS, ETC.

The only limit to the power granted to railroad corporations to take lands for railroad purposes is the reasonable necessity of the corporation in the discharge of its duty to the public.

This includes the acquisition of lands for depots and buildings convenient and proper for the storage and keeping of cars and locomotives when not in use, and for the receipt, storage, safe keeping and delivery of freight and property, as well as such facilities as are usually required in operating its road and the successful prosecution of its business·

When the necessity exists and a reasonable discretion is exercised the courts will not interfere.

In determining the necessity the prospective needs of the corporation within a reasonable time may be taken into consideration.

When a case is brought within the legitimate exercise of this power, the consideration that such exercise will be attended with extreme inconvenience and hardship to individuals is not entitled to any weight; where a clear right to the exercise of the power is shown it is the duty of the courts to authorize it.

In proceedings by petitioner under the general railroad act (§ 21, chap. 140, Laws of 1850), as amended in 1869 (chap. 237, Laws of 1869), to acquire "for the purpose of its incorporation" the titles of the individual owners of a tract of land in the city of New York which is intersected by streets and avenues, without the control of which the plans of the petitioner could not be carried out, the order appointing commissioners provided that it should not affect any rights or interests of the city corporation in the streets and avenues. *Held*, that said provision did not conflict with the right to acquire the lands of the individual owners in the first instance, as it did not prevent a future acquisition of a right to use and control the streets for the purposes of petitioner's road, and it was to be assumed that such right would be acquired; that to guard against a failure in this respect it might be made a condition of the final order that this should be done before the lands became

vested in the petitioner; that there was no rule requiring, under such circumstances, that the acquisition of one interest should precede the other, or that proceedings should be had to acquire each and all at the same time.

The provision of the act of 1876 (§ 2, chap. 198, Laws of 1876) providing for the publication of notice of application for the appointment of commissioners whenever land "required by a railroad company for the purposes of its road" forms part of any street or avenue "in which the owners of adjoining lands * * * claim a right of property or the fee thereof," applies only to a case where the fee of the land itself is required by the company for its roadway, and is sought to be acquired as authorized by the act of 1854 (§ 4, chap. 282, Laws of 1854); it does not apply to proceedings by such company to acquire land "for the purposes of its incorporation" under the act of 1850 (§§ 13 *et seq.*); it also applies only where the adjoining owners have the fee.

The papers disclosed that the land sought to be condemned was for the purpose of obtaining additional and increased facilities for the transaction of business connected with petitioner's railroad. *Held,* that the fact that the land lay at the end of the route of said road and that the area of territory for tracks and other purposes would be greatly enlarged by its acquisition, did not establish that the proceeding was for a change of terminus of the road within the meaning of the act of 1876 (chap. 77, Laws of 1876), and so that the consent of two-thirds of the common council of the city as required by said act was not requisite; but *held,* that even if such consent was essential, it was not required to be obtained in advance of proceedings against the individual owners.

*It seems,* that streets and avenues in the city of New York the fee of which belongs to the city cannot be condemned in proceedings by a railroad company to acquire additional land "for the purpose of its incorporation."

The rule, however, that corporations deriving power from the Legislature to take property under the right of eminent domain cannot exercise such power in reference to property already dedicated to public use, does not prohibit the acquisition of a right to use streets and avenues and piers at the end thereof included within land sought to be condemned for railroad purposes.

Land under water in the Hudson river, with or without a water-front, required by a railroad corporation for piers and wharves to facilitate the transportation of freight may be condemned by proceedings for that purpose.

*The R. and S. R. R. Co.* v. *Davis* (43 N. Y., 137), distinguished.

The rights in the waters of the port of New York reserved to the public by the acts of the Legislature granting lands under water to the city of New York, are not invaded by the appropriation of the land for such railroad purposes.

*People* v. *Vanderbilt* (28 N. Y., 396), distinguished.

As to whether a railroad corporation can acquire an exclusive right to the use of the piers, *quære.*

SICKELS—VOL. XXXII.    32

Lands may be acquired by a railroad corporation to provide a place of deposit or storage for freight after its arrival, and until it is taken by the consignees.

It appeared that petitioner had entered into a contract with the New York Produce Exchange by which it was agreed that petitioner might put together "in warehouses, boats or other receptacles" provided for that purpose, grain of the same kind and grade, without regard to ownership; that the company shall issue to consignees guaranteed certificates for such grain, and shall deliver, on presentation of a certificate, grain to the amount and of the grade called for by it at any customary place of delivery in the port of New York. *Held,* that the arrangement did not contemplate anything unauthorized on the part of a railroad company in conducting the business of transferring grain, but simply facilitated that business.

Also *held,* that it was no objection that one object of the petitioner was to make freight connections with lines of steamers and vessels; that this was a legitimate purpose for which lands might be condemned.

(Argued March 25, 1879; decided May 20, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term authorizing the taking and appointing commissioners to appraise the value of lands sought to be taken by petitioner.

The land sought to be acquired is a tract in the city of New York along the Hudson river, between Sixty-fifth and Seventy-second streets, adjoining on the west the present roadway of the petitioner. A large portion of the land is under water.

The reasons for taking such property, as stated in the petition, are as follows: "That the petitioners, in addition to the real estate which they have already acquired, require all that certain parcel of real estate situate in the city of New York, and hereinbefore particularly described, for tracks, switches and sidings whereon and whereby cars and trains may be moved, loaded and unloaded, stored, received and dispatched; for freight sheds, wherein freight may be received and stored, and thence loaded into cars or delivered to consignees; for an engine house or houses and for a yard for the storing of coal for engines; for wharves, docks and

piers, whereon tracks may be laid and alongside of which vessels may lay to receive and deliver freight carried and to be carried on said railroads, and for other terminal facilities for the purpose of running and operating their railroads."

The facts appear sufficiently in the opinion.

*Joseph H. Choate*, for appellants, Lombard and others. The water front of New York city cannot be appropriated to private ownership or condemned for the use of a railroad company without special authority of the Legislature. (*Commissioners* v. *Clark*, 33 N. Y., 251; *Taylor* v. *Atlantic Ins. Co.*, 37 id., 275; *In re Boston and Albany R. R. Co.*, 53 id., 574; *In re Rochester Water Comm. to Acquire Lands, etc.*, 66 id., 413; *In re Application of the City of Buffalo for the Appointment of Commissioners, etc.*, 68 id., 167; *Boston Water Power Co.* v. *B. and W. R. R. Co.*, 23 Pick., 360; *Springfield* v. *Conn. R. R. Co.*, 4 Cush., 71; *Central Bridge* v. *Lowell*, 4 Gray, 474; *In re Fowler*, 53 N. Y.; *Mohawk and H. R. R. Co.* v. *Archer*, 6 Paige, 83; *H. and D. Canal Co.* v. *N. Y. and E. R. R. Co.*, 9 id., 323; *Boston and Lowell R. R. Co.* v. *Salem and Lowell R. R. Co.*, 2 Gray, 1.) The acquisition of piers, slips and docks for shipping business is not among the legitimate uses and purposes for which, under the statute, a railroad may lawfully exercise the power of eminent domain to condemn private property for public uses. `(*R. and S. R. R. Co.* v. *Davis*, 43 N. Y., 137; *N. Y. and H. R. R. Co.* v. *Kip*, 46 id., 546, 553.) The petitioner failed to make out a present public necessity for more lands, and hence its petition should not be granted. (43 N. Y., 145; Cooley Const. Lim., *539.) A *bona fide* attempt to purchase by an actual negotiation is a condition precedent to the filing of the petition. (*N. Y. and B. R. R. Co. Case*, 12 Abb. [N. S], 21.)

*S. P. Nash*, for appellants, Maclay and others. The petitioner could not obtain title to the lands covered by streets and avenues, in the tract sought to be condemned. (McMas-

ter's, p. 20 ; Laws of 1850, chap. 140, § 28, sub. 5 ; 2 R. S. [6th ed.], 533 ; Laws of 1876, p. 204 ; Const. Am. Laws of 1874, p. 928 ; Laws of 1876, p. 60 ; *N. J. Southern R. R. Co.* v. *Long Branch Commrs.*, 39 N. J. L. Rep., 28 ; *Boston and Maine R. R. Co.* v. *Lowell R. R. Co.*, 124 Mass., 368 ; *In re City of Buffalo*, 68 N. Y., 168 ; *In re Rochester Water Comm.*, 66 id. 413.) The water front of the city of New York and the lands adjacent to it under water are subject to the public uses of navigation and commerce, and cannot be taken under the authority given by the general railroad act. (*Taylor* v. *Atl. Mut. Ins. Co.*, 37 N. Y., 275 ; *Comm'rs* v. *Clark*, 33 id., 251 ; *Comm'rs* v. *Erie R. R. Co.*, 5 Rob., 366 ; *People* v. *Vanderbilt*, 28 N. Y., 396 ; 2 R. L. of 1813, p. 434, § 229 ; Laws of 1857, vol. 1, p. 762 ; Laws of 1858, p. 413.) The purpose for which the land was sought to be taken was not within the act. (*In re N. Y. and H. R. R. Co.* v. *Kip*, 46 N. Y., 546, 552, 553 ; *J. Russell Man. Co.* v. *N. H. S. Co.*, 50 id., 121 ; *Hedges* v. *H. R. R. Co.*, 49 id., 223 ; *Rogers* v. *Wheeler*, 52 id., 262.) The petitioner had no right to extend its powers as a carrier by contracting to deliver by water. (*Parish* v. *Wheeler*, 22 N. Y., 494 ; *R. and S. R. R. Co.* v. *Davis*, 43 id., 137, 144, 146, 147 ; 66 id., 40.) The question as to the necessity, for the legitimate purposes of the petitioner as a carrier, of the land claimed is largely one of fact, and should be submitted to a jury. (*People* v. *Smith*, 21 N. Y., 595 ; *In re Deansville Cemetery*, 66 id., 569.) The omission to file the map required vitiated the proceeding. (McMaster's R. R. Law, 58, 59 ; *In re Marsh*, 71 N. Y., 315 ; *In re N. Y. C. R. R. Co.*, 5 Hun, 86.)

*John E. Burrill*, for respondents. The petitioner would be entitled to acquire title to the lands in question for the purpose of moving upon them its cattle-pens, elevators, etc. (*Met. Gas Co.*, 5 Hun, 201 ; 63 N. Y., 333 ; *In re B. and A. R. R. Co.*, 53 id., 574 ; *Rochester Water Co.*, 66 id., 418.) The objection that there is a large extent of water front attached to the property sought to be taken is not well founded. (66 N.

Y., 326, 330 ; *Marshall* v. *Guion*, 11 id., 461 ; *Taylor* v. *Atlantic Co.*, 37 id., 275 ; *Rodney* v. *Briggs*, id., 256 ; *Comr. of Pilots* v. *Clarke*, 33 id., 251 ; *People* v. *Lambier*, 5 Den., 9 ; 5 Hun, 201 ; 63 N. Y., 327 ; 43 id., 137.) The petitioner is bound to provide proper storage accommodation for freight until the consignees have had a reasonable time to remove it, as well as for the safe keeping of baggage. (*In re N. Y. and N. H. R. R. Co.* v. *Kip*, 46 N. Y., 552, 553 ; *Burnell* v. *N. Y. C. R. R. Co.*, 45 id., 184 ; *Redmond* v. *Liv., N. Y. and P. S. Co.*, 46 id., 578 ; *McAndrew* v. *Whitlock*, 52 id., 40 ; Story on Bailments [8th ed.] ; Laws 1857, chap. 444, §§ 3, 4.)

Miller, J. Various objections are urged against the right of the petitioners to acquire the land sought to be appropriated by them for the purposes of their railroad.

A point is made that the premises intended to be taken constitute a tract of land which is intersected by streets and avenues, without the control of which the plans of the petitioners cannot be carried out ; and that the order appealed from does not give them such control. It is true, that the order appealed from, which condemns the land and directs the commissioners to appraise the same, provides that it shall not " affect any rights or interests which the mayor," etc., " of the city of New York may have in or to any streets or avenues embraced within the limits," etc., of the land described ; but such reservation cannot be considered either as an evasion of the requirements of the statutes relating to the acquisition of streets or avenues for railroad purposes, or as preventing a future acquisition of a right to use and control the same for the purposes of the road. It can only be regarded as a proper protection of the rights and interests of the city until the same are lawfully acquired from the corporation by due course of law. Such a provision in the order in no way conflicts, we think, with the right to acquire the land of the appellants in the first instance, as it may be assumed that such right to the use of the streets and avenues will be afterwards acquired ;

and to guard against any failure in this respect, it may be made a condition of the final order herein that this shall be done before the lands become vested in the petitioners. There is no rule which requires that under the circumstances presented, where different rights are essential in order to acquire an interest in and for railroad purposes, that the acquisition of one interest should precede the other, or that proceedings should be had to acquire each of them at the same time. The provisions of the general railroad act (2 R. S. [6th ed.], 533, § 39, sub. 5) are not inconsistent in any respect with the order granted; and conceding that the assent of the corporation of the city of New York may be required to authorize the construction of the new tracks, that consent is not necessarily preliminary to the acquisition of the land of the appellants and may, we think, be lawfully obtained after the right to such land has been acquired. · The second section of chap. 198, S. L. of 1876 has no application to this proceeding, but applies only to a case where the land itself is required by the railroad company for its roadway, as authorized by § 4, chap. 282, S. L. of 1854, which is distinct from proceedings to acquire land "for the purposes of its incorporation," under § 13 of chap. 140 of S. L. of 1850. By chap. 237, S. L. of 1869, streets in a city or village may be taken by a corporation for the construction of the road, as provided in § 28, sub. 5. chap. 140, S. L. of 1850. The present proceedings are had under § 14 of chap. 140, *supra*, which requires service of the petition and notice of its presentation upon all parties interested, and no additional notice is required by publication where personal service is provided for. The act of 1876, chap. 198, § 2, which requires publication in two newspapers, only applies when the owners of " adjoining lands on the line of a street " have the fee and this right is sought to be extinguished. The petitioners do not seek in this application, nor could they acquire title to land forming a part of the streets and avenues in question, for the reason that they belong to the city, for the benefit of the public at large, and

cannot be condemed : (*People* v. *Kerr*, 27 N. Y., 188 ; *Towle* v. *Remsen*, 70 id., 303; S. L. of 1865, 551.) There is, therefore, no force in the suggestion last considered. Such is the case more especially, for, as we have seen, the rights of the city are expressly excepted from the operation of the order made in this proceeding.

So far as the rights of owners of land adjacent to the streets and avenues are concerned, they have no direct interest in the question which arises in reference to the same, for the grants under which they hold the land under water expressly declare that they shall forever thereafter continue and remain public streets and avenues. The petitioners can only acquire the rights of the owners of the premises under the grants to them ; and such acquisition would be subject to all the covenants, conditions and provisos which are stated and recited in the grant, and which constitute a material and important part of the same.

The claim that this proceeding is one for a change of terminus of the road, and hence the consent of two-thirds of the common council must be obtained, in pursuance of chapter 77 of the Laws of 1876, is not, we think, well founded. The papers show that it is for the purpose of obtaining additional and increased facilities for the transaction of business connected with the railroad ; and although these facilities are demanded for railroad purposes at the end of its route, and very much enlarge the area of territory necessary for tracks and other conveniences, they cannot be considered as the location and establishment of a new terminus, and are not within the provisions of law relating to that subject. But even if such was the fact, we are unable to see how the rights of the appellants are affected injuriously by a failure in the first instance to obtain the consent of the common council of the city of New York. Although finally essential, it is of no importance that it should be in advance of the proceeding against the appellants, for unless it be obtained, if required, the right of the petitioners would not be perfected and complete in conferring authority for the use of

the streets and avenues, or in obtaining the land sought to be acquired. The rights of the city certainly cannot be impaired or barred, without its consent or until it has an opportunity to be heard. No injury can result to the appellants, because the proceedings are instituted for the taking of their land anterior to the obtaining of a right to the use of the streets and avenues ; and it may be assumed that the city authorities will be vigilant and watchful in protecting their own rights, as well as those of the public entrusted to their charge, and in preventing any appropriation of their interests by the railroad company, unless warranted by the facts presented and sanctioned by the due course of legal proceedings. In view of the considerations presented, there seems to be no impropriety nor legal obstacle or objection to a proceeding at once against the lands of the appellants without regard to the rights vested in the city.

The doctrine that corporations who derive power from the Legislature to take property by the right of eminent domain, cannot exercise such power in reference to property already dedicated to public use, without an express grant, cannot be controverted : (*In the Matter of the B. and A. R. R. Co.*, 53 N. Y., 574; *In the Matter of the City of Buffalo*, 68 id., 168; *In the Matter of Water Commissioners*, 66 id., 413.) This salutary rule, however, has never been carried to the extent of holding that streets and avenues included within the land sought to be condemned, are so far appropriated to public use that no authority can be conferred to obtain any right to use the same for railroad purposes. Such a rule would prevent the extension of railroads in large cities and arrest improvements of this description, to an extent that would be detrimental to the public interests, as well as to the advancement of facilities for increasing the means of transportation of the products of the country, from distant points to the great centres of trade and commerce, where they may be made available in promoting the prosperity of the community and returning to the producer the avails of his labor.

The rule stated, which it is claimed can be invoked in this case, we are of opinion has no application to streets and avenues of a city, appropriated for the public use, which will remain the same if used for railroad purposes, except so far as such appropriation may to some extent circumscribe their use, as previously enjoyed, and as must inevitably be the case where railroads are constructed in the streets and avenues of large cities, for the benefit of the public and in promotion of the convenience, comfort and prosperity of the communities which they so largely benefit.

The *same principle* is applicable in reference to the use of the water front and the lands adjacent to it which are under water. The water front which the petitioners can acquire for the use of their railroad, will consist of the bulk-head lying between the piers, which must necessarily be built in carrying out the improvement contemplated by the company. The piers at the end of the streets and avenues are mere extensions of the same, the title to which is vested in the corporation for the benefit of the public: (*Marshall* v. *Guion*, 11 N. Y., 461; *Taylor* v. *Atlantic Mut. Ins. Co.*, 37 id., 275; *Radway* v. *Briggs*, 37 id., 256; *Com. of Pilots* v. *Clark*, 33 id., 251; *People* v. *Lambier*, 5 Den., 9.)

The question whether the company can obtain the exclusive authority to the use of the piers, under the law applicable to such rights, as was said by the judge at Special Term, is not now before us. It is dependent somewhat upon the action of the proper department of the city government, which has the control of wharves or piers. These authorities can confer no more rights and privileges than the law sanctions; and if they have the power to grant the right to the use of the same for the purpose of receiving and delivering freight, it cannot be claimed, we think, that they have been diverted from the use for which they were intended. Should the petitioners obtain the land sought to be condemned, they will no doubt attempt to secure the use of the piers, for the benefit of the railroad. The company already possesses such a right in regard to other piers now used by them, and no

reason exists why land for such additional piers should not be acquired as may be necessary for the purpose of conducting the legitimate business of the corporation.

The objection, that land under water, cannot be taken, by reason of any provisions of law relating to the taking of land, or that the acquisition of land under water, with or without water front, stands upon different principles from that of ordinary land, is not, we think, available in this application. The effect of such a rule would be to prevent the appropriation of land, in many instances, which might be absolutely indispensable for the business interest and success of a railroad corporation. Such a rule would lead to great embarrassment in the prosecution of railroad enterprises, and would not be a practical application of the law relating to the acquisition of land in such cases. Experience in the management of railroads demonstrates clearly that piers, wharves and docks, whereon tracks may be laid and at which vessels may lie to receive freight, are quite as essential as other facilities, and observation shows that, in many cases, without these auxiliaries, railroad corporations would be inefficient and fail to answer the great ends for which they were organized. To hold that they must be summarily arrested when they approach a water front, where piers and wharves are required for vessels in which to discharge the produce and merchandise transported, would be circumscribing the operations of such corporations and confine them within a limited field of action, which might seriously impair their usefulness and greatly interfere with the objects which they were intended to accomplish. When, therefore, it appears that land is required, in connection with the transfer and delivery of freight, by a railroad company for piers and wharves, which increases the facilities for transportation and benefits the public at large, no sound reason exists why it should not be used for such a purpose. Such an object is not an interference with the rights of the public to the free and unobstructed use of the piers and wharves, for the purposes of trade and

commerce, but is in furtherance of those very objects. The case of *The R. and S. R. R. Co.* v. *Davis* (43 N. Y., 137), which is relied upon by the appellants' counsel, is not in conflict with the rule last stated, and in no sense sustains the proposition that the use of piers and wharves are not within the provisions of the railroad act, or that land for such use is not liable to be condemned, in a proper case, by proceedings for that purpose. That case holds that the acquisition of lands for speculation or sale, or to prevent the interference of competing lines of railroads, or methods of transportation, or in aid of collateral enterprises remotely connected with the running or operating of the road, are not such purposes as authorize the condemnation of private property therefor. The remarks of the learned judge in the opinion, as to the construction of slips not being necessary for corporate purposes within the statute, were limited to the proofs then before the court, and did not lay down any general rule as applicable to all cases of such a character. In *The N. Y. and H. R. R. R. Co.* v. *Kip*, (46 N. Y., 546), ALLEN, J., in commenting upon the case last cited, says that the " application was not for the *bona fide* purposes of the corporation, but for speculative purposes and in fraud of the act conferring the power." No such purpose is apparent in the case at bar.

It may be fully conceded, we think, that under the acts of the Legislature granting the land under water to the city of New York, it is held in trust for the uses therein mentioned, and that it cannot be appropriated for any purposes inconsistent with such use and the rights of the public in the waters. And yet, it by no means follows that such rights are invaded by an appropriation for the purposes now claimed. In fact, it is entirely consistent with the objects of the grant that great railroad enterprises should be permitted to enjoy the privileges which were intended to be conferred for the public benefit. Without close communication of the railroads, in the city of New York and in other large cities, which are located near the water, with the water front, the

means of transporting produce and merchandise would be seriously interrupted, and great and irreparable injury would result to the business interests of such localities, as well as to the public at large. This clearly could not have been intended; and the use of piers and wharves for tracks and other purposes, in conducting the legitimate business of these corporations, is an absolute necessity in many cases.

The case of *The People* v. *Vanderbilt* (28 N. Y., 396), which is cited and relied upon by the appellants' counsel, to sustain the position that the railroad company cannot assume the burden of keeping the streets and avenues open for general use, and exercise the franchises connected with the piers and wharves, is not in point. In that case, it was held that the erection of a crib or pier in the waters of the harbor of New York, without being lawfully authorized, was a purpresture and *per se* a public nuisance. Such a case has no analogy to the acquisition of lands by authority of law, for the legitimate business of a railroad corporation, and cannot affect the question now considered.

It is not intended to hold, nor is it necessary on this application to decide that the streets and avenues, and the piers and wharfs, may be absolutely taken and appropriated, without the consent of the proper authorities, and in direct violation of the rights of the public to the use of the same, as in cases where ordinary land is taken. In reference to this aspect of the case, it is sufficient to say that if for any reason the right to the use of the streets and avenues or to the piers and wharves, or to construct piers and wharves, on the river front, would be so exclusive and absolute as not to be authorized by any existing provisions of law, an application to the proper authority can be made for such use, and if a proper case is established, it will be granted. If not obtained, as we have seen, no harm can result to the appellants, as the right of the petitioners will not be completed or made perfect until this is done.

The objection that the storing of property is one of the objects of obtaining the land sought by the petitioners, is

not well taken.  It is not contemplated to establish the
business of warehousemen, as we regard the testimony, but
only a place of deposit or storage for property after its
arrival, until it can conveniently be taken by the consignees.
This seems to be entirely legitimate ; for were it otherwise,
the company would be compelled to allow the property to
remain in the cars and thus obstruct the transportation and
delivery of freight or to remove it to distant places, perhaps
at large expense to the consignee, and at great trouble and
inconvenience.   There is no lawful objection to providing
temporarily a place of deposit for the safe keeping of prop-
erty received, until it can be taken away ; and such a pro-
vision is not inconsistent with the duties or business of
common carriers, or foreign to the purposes of the corpora-
tion.   In fact, as the liability of the company for such
freight continues until actually delivered, or until the con-
signee has a reasonable time to remove the same, it is its
duty to provide accommodations for storage until this is
done : (*In re N. Y. C. and H. R. R. R. Co.* v. *Kip*, 46
N. Y., 552, 553; *Redmond* v. *L., N. Y. and P. S. Co.*, 46
id., 578; *McAndrew* v. *Whitlock*, 52 id., 40.)   The corpora-
tion does not, by furnishing means for taking care of property
which comes into its possession prior to its delivery, and
providing the necessary grounds and erections for that pur-
pose, depart from the legitimate object of its organization
or in any way transcend its powers.

Nor are we able to perceive from the evidence presented
by the appeal book, that the proceeding of the railroad
company is in reality for the benefit of the Elevator and
Water Transportation Companies, who are connected with
and have an interest in the storage and delivery of the
grain transported upon the railroad of the petitioners.

The contract with the Produce Exchange is intended to
facilitate the transfer of grain, and there is nothing in any
of its terms and conditions which prevents the transaction
of the business of this character, in accordance with the
usual and accustomed mode, or which has in contemplation

anything which is not authorized, in conducting business of that description by a railroad corporation. The agreement provides that the petitioner may put together "in warehouses, boats or other receptacles" provided for that purpose grain of the same kind and grade without regard to ownership; that the company shall issue to consignees guaranteed certificates, and shall deliver on presentation of a certificate grain to the amount and of the grade called for at any customary place of delivery in the port of New York. It does not demand that the company shall hold grain for any period of time beyond what is absolutely required for the removal of such grain; and the company are under no obligation, as the testimony shows, to retain the grain for a moment, unless they choose to do so, and can discharge the same from the elevator immediately into boats or lighters lying in the stream. The arrangements as to the grading of the grain and for grain certificates accordingly are a matter of convenience for the company, as well as the consignees, saving time and trouble in keeping that which belongs to different owners separate and distinct from each other, and allowing all of the same grade to intermingle, and thus to be delivered without regard to any particular grain.

As to the elevators, the lands are not sought to be acquired for the purpose of the erection of new ones, and those now used belong to the company. It is evident that while they may be used temporarily for the storage of grain, as well as other portions of the company's depot, they furnish additional means for its more speedy delivery, and hence promote the convenience of all parties who are interested in the grain, which constitutes a very important branch of the business of transportation. It cannot be doubted, we think, that the arrangements with the Produce Exchange, to which reference has been had, and the means provided for the storage and by elevators for the removal of the grain, increases the capacity of the corporation for transacting business and enables it to compete successfully with other

lines of transportation, and thus prevents an unnatural diversion of business to other centers of trade, to the detriment of the locality of the terminus of the petitioner's railroad. There is nothing illegitimate or unusual in this mode of transacting business.

Nor is there any just ground of complaint that the company receives freight at its depot and makes arrangements for freight connections with lines of steamers and vessels, the same as it does with other railroads. What lawful objection can there be to thus extending its business and increasing its facilities? Why should it not aid in carrying the produce of the country to other lands, where larger prices and larger rewards for the labor of the producer can be obtained? Such enterprise is within the scope of its legitimate business and if lawfully pursued, should be encouraged.

The proof establishes that the interest of the railroad company in the freight ceases when it is delivered upon the vessel by which it is to be further transported, and it derives no profits after this is done. The arrangements for the shipment of grain to foreign ports are made without any regard to the petitioners or their pecuniary interests. It is also proved that the petitioners have no interest in the lighterage, which being dangerous and expensive to the consignee, is sought to be avoided by the acquisition of the land in question.

A careful examination of the various objections urged by the appellants leads to the conclusion that the objects for which the petitioners seek to acquire the land in question, are entirely proper and lawful, and within the scope of the grant of power which authorizes the taking of land for railroad purposes. The only limit to the power in such cases is the reasonable necessity of the corporation in the discharge of its duty to the public. This necessity includes the acquisition of land and accommodations for all depots and buildings, convenient and proper for the storing and keeping of its cars and locomotives when not used; for the receipt, delivery, storing and safe keeping of freight and property, as well as such facilities as are usually required in operating

the road ; the successful prosecution of its business ; the general purposes of the corporation, and the design in contemplation by the legislative grant : (*In re N. Y. C. and H. R. R. R. Co.* v. *Kip*, 46 N. Y., 546; *In re B. and A. R. R. Co.*, 53 id., 574; *In re N. Y. C. and H. R. R. R. Co.* v. *M. G. Co.*, 63 id., 331.) Where the necessity exists, and a reasonable discretion is exercised, the courts will not interfere. Within this rule we think it is established that the objects in view are legitimate and proper, and that the application of the petitioners in this respect is well founded.

A single question remains to be determined, and that is, whether the area of territory included in the application, is actually required to accommodate and transact the business of the railroad, and an existing public necessity demands the appropriation of the same. The company have now a depot extending from Fifty-ninth to Sixty-fifth streets and between its roadway and the Hudson river ; and the lands described in the petition adjoin these premises. They comprise several lots, according to the map, mostly under water, which it will be necessary to fill up and utilize for the purposes of the road. The evidence taken before the referee clearly shows that more land is needed for the various purposes which have already been the subject of discussion and consideration, and all of which, as we have seen, are within the legitimate scope and object of grants for railroad purposes. There can be no question, from the testimony of the principal managers of the railroad who have been examined ; of those having charge of the various branches of business connected with the freight traffic conducted by the corporation ; of others who are familiarly acquainted with its business, and of civil engineers who have a special knowledge of the different localities, and of the use to which the land is designed to be applied, that the needs and necessities of the company actually require the land embraced within the limits of territory which is described in the petition. It will enable the company to lay out additional tracks for the loading and unloading of cars ; furnish additional room for the storage of cars

to receive and deliver freight with increased convenience; save time and expense to the consignees of freight and to the company, and in every respect promote the interests and welfare of the road, as well as of those who furnish freight for transportation. The growth and increase of business has been rapid for a number of years past, and demands material changes in the depots, freight and other buildings and structures which belong to the company; and these wants cannot be overlooked without a serious disregard of the demands of trade and commerce.

The evidence also establishes that at times the road has been blockaded by the large supply of freight, so that some portion of its business has been temporarily suspended and obstructed, and it has required great efforts to remove the obstacles presented. These general facts, without a reference to others not material to be particularly stated, show conclusively that to enable the company to furnish the reasonable and proper facilities which are demanded by the necessities of the public and the wants of the corporation, the land in question is absolutely required and, in fact, it is indispensable for the existing needs of the railroad. We do not deem it necessary to refer in detail to the testimony of the witnesses, which establishes the large increase of business and the entire insufficiency of the present accommodations; and suffice it to say, that they are entirely apparent, if credit is to be given to the evidence introduced before the referee, and that the land required constitutes no greater, more extended, or larger territory, and will furnish no more facilities than are possessed by other great railroad corporations at the termination of their routes in large cities and at great central points. These facts are not substantially contradicted, as we understand the testimony. The principal evidence in opposition to them is that of two civil engineers, who give their opinions as to the number of tracks which may be laid in a given space, and the necessity of room, and the radius within which these tracks may be made to operate. Giving full force to this evidence, it is scarcely

sufficient to overcome the strong and convincing proof produced by the petitioners to establish the necessity of taking all the land now solicited. The weight of the evidence is most manifestly in favor of the petitioners, and fully justifies the conclusion arrived at by the judge at Special Term, adjudging that the allegations of the petition were proven, and that the petitioners are entitled to the relief asked. It is difficult to see upon what ground the conclusion referred to and the evidence by which it is supported, can be disregarded. Some points are made by the learned counsel for the appellants which, it is urged, lead to a different result. These are entitled to a careful examination and the most serious consideration, and so far as material we will proceed to examine them.

One of the grounds urged is that the needs proved, as distinguished from those alleged, are purely prospective. As we have seen, it is plainly apparent that the existing accommodations are inadequate for the freight traffic of the railroad, and that the prospective increase of its business is such as to require a larger space, and more territory and conveniences. We think that there can be no occasion to doubt, in view of all the facts presented, and the history of successful railroad enterprises, of which we are entitled to take notice, that it is established, beyond any serious question, that a large increase of freight may and will occur; and thus a case is made out directly within the rule laid down in the opinion of ANDREWS, J., in *In re R. and S. R. R. Co. supra,* Even although three additional piers may for the present furnish all needful room, it cannot be said, I think, in view of the evidence, that these are ample for all purposes within a reasonable time, which should also be taken into consideration. The appellants introduced testimony upon the hearing to show the practicability of building all the piers which, it claims, were needed on the present water-front owned by the company; but this is controverted by the evidence of the petitioners, which shows not only that this cannot be done, but that even if the water-front

would be sufficient, and such piers could be erected to advantage, they would not add to the facilities of doing business, for the reason that the area of land is insufficient to use such piers successfully; that the increase of wharves or piers demands a corresponding increase of storage, tracks and switching room, and without such latter accommodations, the wharf room is of no use. This, we think, is a sufficient answer to the point urged.

In regard to the erection of piers, it should be borne in mind that the dock department of the city has an exclusive control, and that the owners of the upland have no voice on the subject. Hence it rests with the city authorities to present all proper objections to the increase of piers. This consent being essential, according to the usual provision contained in grants of water rights made by them, it may be assumed that it will not be granted unless the necessities of the company require the same, and it is lawful and just that permission should be given.

It is also said that even although it should be found, in view of the evidence, that the company are in need of some more land and water-front, there is no necessity for all which is asked for, and especially for that extending from Seventieth to Seventy-second street, and this should be excluded. The answer to this position is that as the evidence shows that all is required, no substantial reason exists why this portion should be excepted. If the land named can be reserved and cut off, then some other portion would be equally liable to the application of the same rule, and as all is demanded and required, and as the facts do not show any special reason why any particular portion should be exempted, it is difficult to discriminate and hold that the part named should be excluded.

As to the claim made by the counsel for some of the appellants that the petitioners show only a need for land to a line about 100 feet west of Twelfth avenue or 100 feet less than the outer bulk-head line, we think it is not sustained by the evidence. Nor is there any just ground for claiming

that the application is not made in good faith, or that the design of the corporation is to obtain the control of more land than is actually required, in view of its present business and future growth, within a reasonable period of time ; nor that the object is the private profit and advantage of the company, without regard to the public interests, or the convenience of those doing business with the railroad corporation.

The river front which is required is somewhat extended, and at the first glance would, perhaps, appear to be large and too comprehensive ; but it is not any larger in proportion than the area of territory which is demanded ; and the evidence warrants the conclusion that it is no more in extent, or any larger or more capacious than is essential to the wants, needs and necessities of one of the great thoroughfares of travel and traffic of the country, which has its terminus at the largest city on the continent, where concentrates the internal trade of the interior, and to a large extent its entire commerce with foreign nations. The business relations which the railroad of the petitioners sustains with near as well as far distant portions of the land, demand large facilities and extensive accommodations for the conveyance of the products of its industry and toil, and for their delivery and transfer at the termination of its route. A liberal interpretation of the railroad act ; a due regard to the circumstances ; and a fair and just consideration of the objects in view, lead to the conclusion that no more is required in this application than the exigencies of the case demand ; and that in the exercise of that discretion which the Legislature has committed to the corporation, in the selection of lands for its use, no abuse has been practiced : (*In re N. Y. C. and H. R. R. Co.* v. *Kip, supra.*)

The exercise of the right of eminent domain, which is only the right of the government or of the people to control the possession of land for public use, is often attended with extreme inconvenience and hardships to individuals, and surrounded with difficulties. But where the party making the application brings a case within the law, these

considerations are entitled to no weight. The Legislature in its wisdom has the power to confer the grant; and having done so, it is the duty of the courts, when the applicants establish a clear right, to authorize the exercise of such power. And when such right is made out satisfactorily, we are not called upon to deny it for any extraneous reasons which do not affect the real merits of the question. While the time when the application is made, so far as it affects the value of property, may be considered, it does not warrant a denial of the application, when made in good faith, where the right is otherwise clear, and a proper case is established for the exercise of the power conferred. In regard to the present low prices of real estate, it may properly be taken into account in estimating the damages.

The other points raised which demand comment are sufficiently considered in the opinion of DONOHUE, J., upon the hearing at Special Term, whose views also cover the principal questions involved, and meet with our approval.

For the reasons stated, the application of the petitioners, was properly granted, and the order of the General Term should be affirmed.

RAPALLO and EARL, JJ., concur; CHURCH, Ch. J., concurs in result; FOLGER, ANDREWS and DANFORTH, JJ., dissent. FOLGER, J., stated the grounds of his dissent as follows : On the ground that it seemed that the lands were sought for the purposes of storage merely, and beyond the needs of the company as common carriers; and on the ground that it did not appear that there was a present necessity for the lands for any purpose.

DANFORTH, J., concurred substantially with the above.

Order affirmed.