---

(70 Misc. Rep. 567.)

NEW YORK CENT. & H. R. R. CO. v. MATTHEWS et al.

(Supreme Court, Special Term, Westchester County. February 25, 1911.)

1. EMINENT DOMAIN (§ 226*)—MOTIONS—VENUE.
    Under Code Civ. Proc. § 3361, providing that the petition for condemnation may be presented to a Special Term of the Supreme Court held in the judicial district where the property is situated; section 3382, providing that practice in condemnation proceedings, where not expressly provided, shall conform to the ordinary practice of the court; section 982, declaring an action for a judgment affecting an interest in real property to be triable in the county in which it is situated; and section 769, providing that a motion in any action may be made within the judicial district in which the action is triable, or in a county adjoining that in which it is triable—though the venue in condemnation proceedings is properly laid in the county where the land is situate, a motion on the petition for appointment of commissioners of appraisal may be properly made in another county in the same judicial district.
    [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 226.*]

2. EMINENT DOMAIN (§ 177*)—CONDEMNATION—PARTIES—"OWNER."
    The word "owner" in the condemnation law (Code Civ. Proc. § 3358), authorizing the proceeding against the owner of land, includes a person who claims an interest in land, and between whom and another there is a dispute over the title.
    [Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 177.*
    For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

3. EMINENT DOMAIN (§ 177*)—CONDEMNATION PROCEEDINGS—PARTIES.
    If the joinder as defendant in condemnation of one merely claiming an interest in the land is not expressly authorized by the condemnation law (Code Civ. Proc. § 3358), it is permissible under Code Civ. Proc. § 452, authorizing the joining as defendants in an action of all persons

claiming an interest in the controversy or real property involved, by virtue of section 3382, providing that practice in condemnation, where not expressly provided, shall conform to the ordinary practice of the court.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 473–485; Dec. Dig. § 177.*]

4. EMINENT DOMAIN (§ 46*)—CONDEMNATION FOR RAILROAD PURPOSES—LAND OF STATE UNDER WATER.

Land under water belonging to the state, though held by the state as trustee for the public, if necessary for railroad purposes, may be acquired by a railroad by condemnation; Railroad Law (Consol. Laws 1910, c. 49) § 17, declaring that all property required by a railroad for the purpose of its incorporation shall be deemed to be required for public use, and may be acquired by it, and section 18, providing that the Commissioner of the Land Office may grant to a railroad land belonging to the people required for the purpose of the road, or it may acquire title thereto by condemnation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 91–93; Dec. Dig. § 46.*]

Condemnation proceeding by the New York Central & Hudson River Railroad Company against Catherine T. R. Matthews and others. Motion to dismiss petition denied.

Alexander S. Lyman, for plaintiff.
Thomas Carmody, for State of New York.
Hawkins, Delafield & Longfellow, for defendants.

TOMPKINS, J.  This is a proceeding by the plaintiff to acquire by condemnation lands situate in the county of Westchester, and described in the petition as parcels Nos. 1 and 2, parcel No. 1 being upland, and alleged in the petition to be owned by the defendants Matthews and Van Cortlandt. No question is raised on this motion concerning the regularity of this proceeding as to that parcel. Parcel No. 2 is alleged in the petition to be lands under the waters of the Hudson river. When the motion came on to be heard upon the plaintiff's petition for the condemnation of said lands and the appointment of commissioners of appraisal, the defendants Matthews and Van Cortlandt appearing generally by counsel, and the people of the state of New York appearing generally by the Attorney General, moved to dismiss this proceeding as to parcel No. 2, upon several and different grounds, each of which will be hereafter stated in the order in which they were made, first taking up the objections and grounds made and presented by counsel for the defendants Matthews and Van Cortlandt.

The first objection urged on behalf of the defendants Matthews and Van Cortlandt is that inasmuch as, by the caption of the notice of motion and petition, the plaintiff has seen fit to lay the venue of this proceeding in Westchester county, the present application cannot be made at a Special Term held in Orange county. I think the point untenable. Section 3361 of the Code of Civil Procedure provides:

"That the petition may be presented to a Special Term of the Supreme Court held in the judicial district where the property or some portion of it is situated."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is conceded that the property described in the petition is situated in this judicial district. Section 3382 of the Code of Civil Procedure, which is one of the sections of the condemnation law, provides:

"In all proceedings under this title where the mode or manner of conducting all or any of the proceedings therein is not expressly provided for by law, the court before whom such proceedings may be pending, shall have the power to make all necessary orders and give necessary directions to carry into effect the object and intent of this title and of the several acts conferring authority to condemn lands for public use, and the practice in such cases shall conform, as near as may be, to the ordinary practice in such court."

By section 982 of the Code it is provided that an action generally involving title to, or for a determination of claims to real property, an action for procuring "a judgment, establishing, determining, defining, forfeiting, annulling, or otherwise affecting an estate, right, title, or lien, or other interest in real property, is triable in the county in which the subject of the action or some part thereof is situated, and by section 769 of the Code it is provided that a motion in any action may be made within the judicial district within which the action is triable, or in any county adjoining that in which it is triable.

It seems to me that all these provisions of the Code apply, and that the venue is properly laid in Westchester county, where the land is situated, and that the motion upon the petition may be properly made in any county in this judicial district. At the most, the designation of Westchester county in the petition and notice as a caption, and as a part of the title, would be an irregularity which might be disregarded by the court, and in no wise affect the jurisdiction of the court at Special Term in any part of the judicial district.

The second point made by these defendants on the argument was that no authority is vested by law in the plaintiff to condemn real estate for the particular purpose for which the plaintiff alleges that the defendant's real estate is required. Counsel, however, on the argument, stated that they did not desire to press that point at that time, but would cover it in their briefs. Their briefs, however, make no mention of it, and I assume that counsel have no desire to now urge that objection to the petition. My conclusion, after a careful examination of the petition, is that it fully states facts entitling the plaintiff, under the law, to maintain this proceeding, and to condemn the lands described in the petition.

The third objection made by these defendants is the one that is seriously urged upon the attention of the court. It is that the petition should be dismissed as to the defendants Matthews and Van Cortlandt, upon the ground that it does not appear upon the face of the petition that these defendants are the owners of parcel No. 2, but that, on the contrary, it is alleged thereby that the people of the state of New York own said parcel, and that under the condemnation law only the owner or owners of land sought to be acquired may be made defendants. In other words, the claim made by these defendants is that a person who only claims an interest in land, and between whom and another there is a dispute over the title, cannot be brought into court and forced to litigate the question of title between himself and the other claimants. The petition alleges respecting parcel No. 2

that it is "land originally under the waters of the Hudson river, title to which is in the people of the state of New York"; and alleges that there is a dispute between the state of New York and the defendants Matthews and Van Cortlandt as to the title of said parcel, and that the defendants Matthews and Van Cortlandt claim to be the owners in fee thereof, under a charter granted to Stephanus Van Cortlandt by William the Third, dated June 17, 1697. The petition further alleges:

"That as plaintiff is informed and believes, the said grant to Stephanus Van Cortlandt aforesaid did not convey title to the premises described in schedule A, annexed hereto, and therein designated as parcel No. 2, and that the title to the said premises still rests in the people of the state of New York."

The effect of which allegations of the petition is to aver that the title to the said land described as parcel No. 2 is in the people of the state of New York, but that the defendants Matthews and Van Cortlandt claim to own the same; and the argument of these defendants in support of their motion to dismiss is that only the "owner," which term under the Code (Civ. Proc. § 3358) includes "all persons having an estate, interest or easement in the property to be taken, or any lien, charge or incumbrance thereon," may be a proper party defendant in such a proceeding as this. I do not think that the lawmakers intended, or that the statute in question means, to limit the meaning of the word "owner" to the particular individual who may in fact and in law be the legal and equitable owner of the property sought to be condemned. If the language is to be given that limited construction, it would be practically impossible for a railroad corporation to acquire by condemnation lands to which there were conflicting claims of ownership. The effect of such a construction would be to make it necessary for the petitioner in such a proceeding to first have the conflicting claims of ownership finally determined. I do not know of any action or proceeding by which that could be accomplished on the initiative of the corporation seeking to acquire by condemnation the disputed land. It seems to me that the only sensible construction to be placed upon the word "owner" is that it includes every person who claims to be an owner. Were it otherwise, and was it left to the railroad corporation seeking to condemn, to determine for itself which of the several claimants was in reality the owner, it would be taking the risk, after condemning the lands, from one and paying therefor, of having to make compensation to the others.

The defendants Matthews and Van Cortlandt claim to be the owners of the property in question, and they cannot be omitted as parties defendant without the plaintiff herein running the risk of becoming a trespasser even after this condemnation proceeding is terminated, and having to pay twice for the property. Any person whose claim to ownership is of such a character that, if established, would make him the owner of the property, is a necessary party to this proceeding, and such a person is, in my opinion, within the meaning of the condemnation law (Code Civ. Proc. § 3358), an "owner." The cases cited by these defendants in support of their contention do not seem to me to be applicable. They were cases in which the dispute as to

title was between the petitioners or plaintiffs in the condemnation proceedings and the persons who claimed to be the owners of the property described in the petition, and the proceedings seem to have been instituted for the purpose of having the question of title determined, as between the petitioners or plaintiffs, and the defendants; and the courts held that such was not a proper proceeding for the determination of questions of title to real estate.

In any event, if I am wrong as to the proper interpretation to be given to the word "owner," then it seems to me that section 452 of the Code of Civil Procedure, which authorizes the joining as defendants of all persons claiming an interest in the controversy or real property involved, applies, by virtue of the provisions of section 3382 of the condemnation law, hereinbefore quoted.

Section 3378 of the Code provides for the payment into court of awards made by commissioners of appraisal in such a proceeding as this, to await a determination by the court of conflicting and adverse claims to the award. The commissioners of appraisal in this proceeding, if they are appointed, will merely determine the reasonable compensation to be paid by the plaintiff for the land to be taken, and the conflicting claims that may be made to the award, if any, shall thereafter be determined by the court.

The Attorney General, appearing for the people of the state of New York and the Commissioners of the Land Office, contends that the petitioner is not authorized by law to condemn land under water belonging to the state, on the ground that the state holds such lands in trust for the people, that they may enjoy the navigation of the waters, carry on commerce over them, and have the liberty of fishing therein free from the obstruction or interference of private parties, and that the state's control over such lands under water can only be relinquished by a transfer of the property, and that such transfers can only be made in promoting the public interests, and must be without any substantial impairment of the public interest in the lands and waters remaining. It is undoubtedly true that the state holds such lands under water, as trustee for the public; but the answer to the Attorney General's objection is that such lands under water as are described in the petition are sought to be acquired by the plaintiff for the public use, and cannot be acquired by condemnation for any other purpose. Section 17 of the railroad law provides:

"All property required by any railroad corporation for the purpose of its incorporation, or for any purpose stated in this chapter, shall be deemed to be required for public use, and may be acquired by such corporation."

Assuming, as alleged in the petition, that the title to parcel No. 2 is in the people of the state of New York (and it is, if it consists of lands under water, and has never been granted by the state to the owner of adjacent or up lands), then section 18 of chapter 481 of the Laws of 1910 authorizes the Commissioners of the Land Office to grant to railroad corporations such lands under water as may be required for railroad purposes, and upon such terms as may be agreed upon by such commissioners and the railroad corporation; or, under said section 18 of chapter 481 of the Laws of 1910, such railroad

corporation may acquire title to such lands under water by condemnation. This seems to be express authority for this proceeding without any attempt being previously made by plaintiff to agree with the Commissioners of the Land Office upon terms.

The Attorney General in his brief cites the case of Illinois Central Railroad Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018. That case, however, does not seem to sustain his contention. In the case of Saunders v. New York Central & Hudson River Railroad Co., 144 N. Y. 75, 38 N. E. 992, 26 L. R. A. 378, 43 Am. St. Rep. 729, the Court of Appeals, referring to the character of the title of the state to lands under the waters of the Hudson river, and to the decision of the United States Supreme Court in the case of the Illinois Central Railroad v. Illinois, supra, says:

"The main assault is based upon the proposition that the state had the title to this land, not as proprietor, but as sovereign and trustee for the public. The contention as to the nature of the title cannot be denied; but the conclusion sought to be drawn from the fact does not follow. The question was decided in this court in Langdon v. Mayor, 93 N. Y. 129, and Mayor v. Hart, 95 N. Y. 443, and has recently been examined with great learning by the Supreme Court of the United States in the case of Illinois Central Railroad Co. v. Illinois. 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018. That case involved the title to a vast tract of land under the waters of Lake Michigan, in and around the harbor of Chicago, extending a mile east of the exterior line of the original roadbed of the railroad, which the state assumed to grant to that corporation in 1869. It was held that the ownership, dominion, and sovereignty over lands covered by tide waters within the limits of the several states belonged to the respective states within which they are found, with the consequent right to use or dispose of any portion thereof when that can be done, without substantial impairment of the public interests, and subject to the paramount right of Congress to control their navigation so far as necessary for the regulation of commerce with foreign nations and among the states, and that the same rule was applicable to land under the waters of the Great Lakes. That original roadbed, 200 feet wide, with the necessary sidings and crossings which had been granted to it by the state under a prior grant and various ordinances of the city of Chicago, was a reasonable public use, and no encroachments upon the domain of the state, and was valid, but that the grant extending one mile easterly of the line of the roadbed amounted to an abdication of its sovereignty and control by the state over the waters and in effect a breach of the trust under which it held the same, and therefore revocable by the action of a subsequent Legislature. The doctrine of that case with respect both to what was sustained and what condemned amply supports the grant in this case, even if there was any ground for supposing that our own decisions do not completely settle the question, as I think they do. The land which the railroad corporation acquires in this state, though it may be technically called a 'fee,' is for its use as a public highway, and this is for the benefit of the public, though perhaps the particular purpose for which the grant was made is not very material. While the state holds the title to lands under navigable waters in a certain sense as trustee of the public, it is competent for the supreme legislative power to authorize and regulate grants of the same for public or such other purposes as it may determine to be for the best interests of the state, and the Legislature has conferred power upon the Commissioners of the Land Office to make such grants for railroad purposes. Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331. Chapter 140 of the Laws of 1850, sections 25–49, empower the commissioners to grant to any railroad company formed under that act any land belonging to the people of the state, which may be required for the purposes of the road, upon such terms as may be agreed upon by them."

This decision bears directly upon the suggestion of the Attorney General that, if this petitioner can acquire the lands under water described in the petition, it would have the right to acquire all the lands under the entire Hudson river. In the Illinois case, the part of the grant that was set aside was held to be unnecessary for the public use, or for railroad purposes, while that part of the grant that was found to be necessary for railroad purposes was sustained. And so here, if the lands sought to be acquired are found to be necessary for railroad purposes, they may be acquired for that public use. While, if an attempt was made, as suggested by the Attorney General in his brief, to acquire all the lands under the river, it would be met, and no doubt successfully, with the claim that no legitimate railroad purpose could by any possibility require all the lands under the Hudson river. The statute expressly says that lands required for railroad purposes are to be regarded as necessary for the public use, and a grant thereof by the Commissioners of the Land Office is expressly authorized or the railroad corporation may acquire such lands by condemnation. Matter of New York Central & Hudson River Railroad Co., 77 N. Y. 256; Rumsey v. N. Y. & N. E. R. Co., 114 N. Y. 423, 21 N. E. 1066, and 133 N. Y. 79, 30 N. E. 654, 15 L. R. A. 618, 28 Am. St. Rep. 600; N. Y. C. & H. R. R. R. Co. v. Aldridge, 135 N. Y. 83, 32 N. E. 50, 17 L. R. A. 516.

The other questions raised by the Attorney General do not seem to be of sufficient importance to require discussion, and all the objections made are overruled, and the motions to dismiss the petition are denied.